450 So.2d 1153 (1984)
James R. CRITCHLOW, Personal Representative of the Estate of Kathleen Williamson, Deceased, Appellant/Cross Appellee,
v.
Robert T. WILLIAMSON, Appellee/Cross Appellant.
Robert T. WILLIAMSON, Appellant/Cross Appellee,
v.
James R. CRITCHLOW, Personal Representative of the Estate of Kathleen Williamson, Deceased, Appellee/Cross Appellant.
Nos. 81-2252, 82-1637.
District Court of Appeal of Florida, Fourth District.
April 26, 1984.
Rehearing Denied June 7, 1984.
*1154 S. Robert Zimmerman, Pompano Beach, Richard R. Kirsch, Fort Lauderdale, and Marjorie Gadarian Graham of Jones & Foster, P.A., West Palm Beach, for Critchlow.
Harry G. Carratt of Morgan, Carratt & O'Connor, P.A., Fort Lauderdale, and Coleman, Leonard & Morrison, Fort Lauderdale for Williamson.
UPCHURCH, F., Associate Judge.
Robert Williamson appeals from a final judgment dissolving his marriage to Kathleen Williamson (Case No. 82-1637). James Critchlow, personal representative of the estate of Kathleen Williamson, cross-appeals from the same final judgment of dissolution and also appeals from a previously entered order declaring the wife's rights under a prenuptial agreement (Case No. 81-2252). The two cases have been consolidated for review on appeal.[1]
The relevant proceedings in the case began when the wife filed a petition for support in January, 1981. The husband counterclaimed for dissolution of the marriage and submitted a prenuptial agreement dated May 27, 1977.[2] The husband claimed that the wife had waived all right to alimony and support in the agreement.
In July, 1981, the court held a hearing solely to determine the meaning and effect of the prenuptial agreement. The husband testified that the agreement provided that the wife would receive nothing in the event of a divorce. The wife's position was that under the agreement, divorce was the same as death and that in the event of a dissolution the wife was entitled to the same benefits she would have received had the husband died. She then asked the court to determine the husband's assets and to award her a portion of them. The court found the agreement to be vague and ambiguous and accordingly set it aside.
Dissatisfied with this result, the wife appealed the order invalidating the agreement. The husband moved to dismiss the appeal. This court denied the husband's motion and simultaneously granted the wife's motion to stay the appeal. The remaining issues in the dissolution action were then tried.
Following the trial, the court entered a final judgment of dissolution of marriage. The court ordered the husband to pay the wife $350,000 as lump sum alimony. The final judgment further directed that in the event of the death of the wife prior to the full payment of the sum awarded, the husband would continue to make payments to the estate of the wife. The judgment specified that the jointly held marital home should be sold at a private sale and that the parties would equally divide the net proceeds of the sale. The final judgment also provided that the husband and wife should bear their own costs and attorney's fees.
The husband moved for rehearing, or in the alternative, for reconsideration and amendment of the final judgment. In that motion, the husband contested the amount of the award of lump sum alimony because of the short term of the marriage, age discrepancy and prenuptial agreement. The husband also argued that the final judgment, which was recorded by the clerk on May 17, 1982, should be set aside because the wife was involved in an accident on May 14, 1982, and was "clinically dead as of Saturday, May 15, 1982, even though she was maintained on support systems until Wednesday, May 19, 1982, when she was declared legally dead." The court denied the husband's motion for rehearing and amendment of the final judgment.
On appeal, the husband presents four issues for our review. First, the husband contends that the trial court lacked jurisdiction *1155 to enter the final dissolution of marriage because the appeal of the order determining the validity of the prenuptial agreement was pending at that time. Second, the husband contends that the court erred in setting aside the prenuptial agreement. Third, the husband contends that the court should not have summarily denied his motion to set aside the final judgment but instead should have received evidence to determine whether the wife was "clinically" dead prior to rendition of the final judgment. Finally, the husband contends that the court erred in awarding the wife lump sum alimony. On cross-appeal, the personal representative of the wife's estate contends that the court erred in failing to award the wife attorney's fees and costs.
The husband's first point lacks merit. It is clear that our stay order allowed the trial court to proceed to a final hearing and render a final judgment in this case so that all questions could be presented in one appeal. However, we agree with the husband that the court erred in setting aside the prenuptial agreement. Because of our resolution of this issue, we need not address the husband's remaining issues. As to the cross-appeal, we conclude that the court did not err in denying the wife attorney's fees and costs. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
The relevant paragraphs of the prenuptial agreement provide as follows:
2. First party [husband] agrees, in consideration of the covenants and conditions of this Agreement, that should he die and at the time of his death the parties to this Agreement are still married to each other, that said FIRST PARTY will leave the SECOND PARTY, [wife] by way of Will, not less than twenty-five (25%) percent interest in a Trust which will consist of all the assets of his estate. A copy of said Trust Agreement and Amendment thereto being attached hereto and made a part hereof. It is further understood that this does not prohibit FIRST PARTY from making gifts and/or additional bequests by Will or otherwise to the SECOND PARTY. No such gifts and/or additional bequests shall be deemed a charge against the said 25% left to the SECOND PARTY.
* * * * * *
4. It is mutually declared, covenanted and agreed between the parties hereto, that it is their intention, that by virtue of said marriage, neither one shall have or acquire any right, title or interest in and to the real property, personal property, both tangible and intangible, of the other, but the estate of each upon his or her demise shall descend to and vest in his or her heirs at law, legatees or devisees, as may be provided for by his or her last Will and Testament, or by the applicable law of the state, then in force, having jurisdiction of the estate of the deceased party hereto, as though no marriage has taken place between them.
5. The parties further covenant and agree, that any and all property, real, personal, or mixed, tangible or intangible, or every kind or character, coming to either of the parties of this Agreement during their marriage, shall be enjoyed by him or her and shall be subject to the disposition by him or by her, as his and as her own separate property absolutely; and upon the demise of either party, such property acquired after the date of said marriage shall descend to or vest in his and/or her heirs at law, legatees and devisees, as may be provided for by his and/or her Last Will and Testament, or, by the applicable law of the State, then in force, having jurisdiction of the administration of the estate of the deceased party hereto, as though no marriage had taken place between them. It is the specific intention of the parties hereto, now declared prior to said marriage, that after-acquired property shall descend to his said heirs, legatees and devisees and to her said *1156 heirs, legatees and devisees, in the same manner and as fully and completely as the respective property or properties, real, personal and mixed, tangible and intangible, which the parties may now own of this date, or as provided in the paragraphs next preceding.
* * * * * *
9. Each of the parties hereto agree that, in the event the within contemplated marriage is consummated and thereafter is dissolved in any manner other than by death of one of the parties hereto, then the terms and provisions of this Agreement shall apply with like force and effect and be binding upon the parties hereto as in the case of the demise of one of the parties hereto. It is specifically understood that in the event of divorce or separation, that the SECOND PARTY has no right to claim alimony or support from the FIRST PARTY.
In interpreting prenuptial agreements, the courts are guided by the same principles which control the construction of other contracts. Hall v. Hall, 135 So.2d 432 (Fla. 3d DCA 1961). Where a contract is clear and unambiguous, it is the best evidence of the intent of the parties and its meaning and legal effect are questions of law for determination by the court alone. Innkeepers Inter., Inc. v. McCoy Motels, Ltd., 324 So.2d 676 (Fla. 4th DCA 1976). However, if a provision is ambiguous, the matter must be submitted to the finder of fact. See Hoffman v. Terry, 397 So.2d 1184 (Fla. 3d DCA 1981).
In Laufer v. Norma Fashions, Inc., 418 So.2d 437 (Fla. 3d DCA 1982), the court explained that a phrase in a contract is "ambiguous" when it is uncertain of meaning and disputed and must be determined as an issue of fact. Here, the husband contends that the agreement clearly provides that the wife was entitled to nothing in the event of divorce. The wife claimed that she was entitled to twenty-five percent of the husband's assets upon divorce.
On appeal, the personal representative argues that a full disclosure of the extent of the husband's estate had not been made prior to the wife signing the agreement. In addition to the fact that this was not the basis for the court's decision, we note that section 732.702(2), Florida Statutes (1983), legislatively changed the disclosure rule announced in Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962). See Estate of Roberts, 388 So.2d 216 (Fla. 1980). Therefore, the only question is whether the evidence below supports the trial court's determination that the agreement was vague and ambiguous and not fairly susceptible of one interpretation.
At first glance, the two sentences of paragraph nine would appear to conflict. The first sentence provides that if the marriage is dissolved in any manner other than by death of one of the parties, then the terms of the agreement shall apply and be binding as in the case of the demise of one of the parties. A final judgment of dissolution "dissolves" the marriage in a manner other than by death. However, the last sentence of paragraph nine provides that it is understood that, in the event of divorce or separation, that the wife has no right to claim alimony or support from the husband.
It is the duty of the trial court to attempt to reconcile inconsistencies in a contract in a manner that renders the contract meaningful. Royal Continental Hotels, Inc. v. Broward Vending, Inc., 404 So.2d 782 (Fla. 4th DCA 1981); Flamingo Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc., 303 So.2d 665 (Fla. 4th DCA 1974). It is also an elementary principle of contract construction that a reasonable interpretation of a contract is preferred to an unreasonable one. Excelsior Ins. Co. v. Pomona Park Bar & Package, 369 So.2d 938 (Fla. 1979). In this instance, the provision that the wife would have no right to claim alimony or support in the event of divorce or separation is clear and unambiguous. A more reasonable interpretation of the agreement and one which would obviate the apparent inconsistency would be that in the event of a divorce, *1157 some provisions of the agreement, such as those relating to the retention of personal property, would be binding. However, the provisions of the agreement which clearly apply only upon the death of a party would not be affected.
The order setting aside the prenuptial agreement is REVERSED. Accordingly, the alimony or support provisions of the final judgment are REVERSED. In all other respects, the final judgment is AFFIRMED.
DAUKSCH, J., Associate Judge, concurs.
SHARP, W., Associate Judge, dissents in part with opinion.
SHARP, W., Associate Judge, dissenting in part.
The probable reason the trial court denied the wife any attorney's fees in this case was its substantial lump sum alimony award which we have just reversed. Accordingly, I think the trial court should be given the opportunity to reconsider its denial of fees to the wife under the present circumstances. I would reverse the denial of fees and remand this proceeding to the trial court for further consideration of that issue.
NOTES
[1] Judges James C. Dauksch, Jr., Frank D. Upchurch, Jr. and Winifred J. Sharp were appointed as associate judges of the Fourth District Court of Appeal to hear this case.
[2] The parties were married on June 19, 1977.